UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

|                              |   |                          |
|------------------------------|---|--------------------------|
| BARRY HATHAWAY,              | ) |                          |
|                              | ) |                          |
|                              | ) |                          |
| v.                           | ) | Criminal  No. 05-017-P-H |
|                              | ) |                          |
|                              | ) | Civil No.   06-134-P-H   |
| UNITED STATES OF AMERICA,    | ) |                          |
|                              | ) |                          |
|                              | ) |                          |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Barry Hathaway has filed a 28 U.S.C. § 2255 motion seeking relief from his guilty-plea conviction on one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).  Hathaway was sentenced to a term of 37-months imprisonment.  The United States has filed a motion for summary dismissal (Docket No. 7) and I recommend that the Court grant this motion and summarily deny Hathaway's § 2255 motion.

### *Discussion*

In his handwritten 28 U.S.C. § 2255 motion Hathaway sets forth four categories of claims: ineffective assistance of counsel; miscarriage of justice; misdirection of the court; and harassment of the defendant by a United States Probation Officer assigned to his case.

### *Case Background*

Given the nature of Hathaway's 28 U.S.C. § 2255 complaints it is best to set forth the progress of his prosecution which led to his guilty plea.  First, Hathaway waived indictment.  The information charges that Hathaway, "knowingly possessed computer

disks and other materials that contained an image of child pornography, the production of which involved the use of <u>actual minors</u> engaged in sexually explicit conduct, that had been transported in interstate and foreign commerce." (Crim. No. 05-17-P-H, Docket No. 2) (emphasis added).

The Prosecution Version reads:

> If the United States were required to try the above-captioned case, it would prove beyond a reasonable doubt that on November 20, 2002, acting pursuant to a state court search warrant, law enforcement officers of the Knox County Sheriff's department searched Hathaway's residence … At the time, the Defendant lived … with his 17-year-old daughter. Among other things, those officers seized 2 computers and 62 compact discs. …. Images on compact discs are viewed using computers such as those found in Mr. Hathaway's residence.
>
> After the search, the Defendant drove to the Knox County Sheriff's Office and spoke with Detectives Donna Dennison and Ernie McIntosh. Among other things, Mr. Hathaway told the Detectives that he had a problem, and that the pornography and paraphernalia found during the search of his residence were his.
>
> Subsequent analysis of the computers and discs recovered from the Defendant's house revealed that one of the computers contained approximately 40 banners of websites that appear to feature child pornography. A sample of these banners is attached as Exhibit A (previously provided to the Court). These banners are the gateways or means of access to the sites. The Government would introduce the testimony of computer examiner Scott Bradeen that the presence of these banners in the computer indicates that the user of the computer had visited the websites.
>
> Mr. Bradeen would also testify that the same computer contained approximately six images of apparent child pornography, and that one of the 62 compact discs contained approximately 595 images of apparent child pornography. Most of these images, a sample which is attached under seal as Exhibit B (previously provided to the Court), are apparently child pornography in that they appear to be visual depictions produced using persons under the age of 18 years, engaged in sexually explicit conduct that is at the very least the lascivious exhibition of the genitals and pubic area of the persons.
>
> Of these images, the National Center for Missing and Exploited Children … has identified at least 16 as being of known minors. Those 16 images are attached as Exhibit C (provided with this prosecution version). Of the 16 images of known minors, all depict prepubescent minors in that

2

the minors in the images do not exhibit mature genital organs, or secondary sex characteristics such as pubic hair.

(Crim. No. 05-17-P-H, Docket No. 4.)

Hathaway filed the following Defendant's Version:

The defendant, Barry Hathaway, has reviewed the prosecution version of events leading up to his charge by information of possession of child pornography in the above referenced matter. After that review, the defendant would acknowledge, with the exception of the recitation concerning the number of images of child pornography contained in the last two paragraphs of the prosecution's version, the facts as outlined are essentially correct.

The defendant would also agree that at the time in question he had in his possession a computer image of at least one known and identified minor under the age of 12 engaged in sexually explicit conduct. The defendant would disagree with the prosecution's claim that there are 595 images of apparent child pornography or that there are 18 images showing known minors engaged in sexually explicit conduct or the lascivious exhibition of genitals or pubic area of the persons. The defendant would also note, because this may not be clear from the prosecution's version itself, that although 62 compact discs and two computers were seized from the defendant, only one computer and two discs contained images that the prosecution considers illegal. The remaining 60 discs and the other computer had nothing on them of an illegal nature.

(Crim. No. 05-17-P-H, Docket No. 5.)

In a plea agreement filed on the same day as the above versions, the parties agreed to recommend a 3 point reduction for acceptance of responsibility and Hathaway waived his right to appeal his guilty plea and his sentence if it did not exceed the number of months provided for in Offense Level 19 of the United States Sentencing Guideline at the criminal history category to be determined by the Court. (Crim. No. 05-17-P-H, Docket No. 6.) The agreement also included a Federal Rule of Evidence 410 waiver in the event Hathaway successfully withdrew his plea. (Id.)

On March 17, 2005, Hathaway appeared before the court to waive indictment and plead guilty. Hathaway, 38 years old, said he had acquired his high school diploma,

could read and write, was not taking any medicines and had not used drugs or alcohol in the preceding 24 hours (Plea. Tr. At 3.) When asked, "Do you feel you understand what's happening in these proceedings?," Hathaway replied, "I do." (Id. at 3.) The Court also asked Hathaway if his lawyer had explained to him "the consequences that may flow from these proceedings?," and Hathaway replied in the affirmative. (Id.) The Court found Hathaway competent to waive indictment. (Id. at 4.)

This Court explained the nature of the charge in the proposed information and Hathaway indicated that he understood the charge. (Id. at 4-5.) Specifically, the Court stated that the "charge is that on or about November 20th, 2002, that you knowingly possessed computer discs and other material that contain an image of child pornography, production of which involved the use of actual minors, real children, engaging in sexually explicit conduct ...." (Id. at 4-5) (emphasis added). The Court advised Hathaway that this was a felony offense and that by pleading to an information, he was giving up his right to have a grand jury decide if there was probable cause that he committed the offense. ( Id. at 5.) Hathaway indicated that he had discussed all of that with his attorney, had received his attorney's advice, and that he understood the nature of the offense, and the rights he was giving up by agreeing to waive indictment. (Id. at 5-6.) Hathaway signed the waiver of indictment form and the Court accepted his waiver.

After Hathaway pled guilty to the charges in the information, the Court engaged in the following colloquy with Hathaway and his attorney:

> THE COURT: . . . First of all, sir, have you pleaded guilty to the charge in the Information because you actually committed that crime?
> THE DEFENDANT: I did.
> THE COURT: Mr. Sanders, are you satisfied that Mr. Hathaway has pleaded guilty because he is actually guilty?
> MR. SANDERS: Yes, Your Honor.

> THE COURT: Mr. Hathaway, I know that you received a copy of the
> Information. Did you have enough time to discuss the charge with your
> lawyer?
> THE DEFENDANT: Yes.
> THE COURT: Did he explain to you not only the elements and nature of
> the offense charged, but also the penalties that can be imposed?
> THE DEFENDANT: He did.
> THE COURT: Mr. Sanders, are you satisfied Mr. Hathaway understands
> the charge and the penalties?
> MR. SANDERS: Yes, Your Honor.

(Id. at 7-8).

The Assistant United States Attorney confirmed that he had complied with his

obligation to notify all victims and that one victim was in the courtroom observing the

proceedings (Id. at 9.) The Court advised Hathaway of his trial rights and Hathaway

indicated that he understood them. (Id. at 9-10.) The Court expressly told Hathaway that

if he entered a guilty plea he would have "virtually no right of appeal from [his]

conviction." (Id. at 11). Hathaway repeated that he understood that and still wished

to plead guilty (Id.)

Hathaway and his lawyer acknowledged that with the exception of the differences

noted in the Defendant's Version, they were satisfied that the Government could produce

the evidence contained in the Prosecution Version. (Id. at 12-13.) Specifically, Hathaway

indicated that he had read the Prosecution Version and discussed it with his lawyer. (Id.

at 13.) He also said that, with the exception of the matters noted in the Defendant's

Version, he did not disagree with anything in the Prosecution Version. (Id.) The Court

found a factual basis for the guilty plea to the crime charged. (Id. at 13-14). The Court

advised Hathaway of that waiver of appeal provision in the plea agreement and reminded

him that it said that if the sentence was at the specified level or below, "I am the last

Judge in your case, and you are agreeing you will not be able to overturn what I do; do

you understand?" (Id. at 16.). Hathaway replied, "I do." (Id.) The Court further explained the remaining rights Hathaway surrendered by pleading guilty, and that his sentence would be guided by the advisory Sentencing Guidelines, but their impact on him could not be determined until after a report of the Pre-sentence Investigation had been prepared and the parties had a chance to object. (Id. at 16-18.)  Hathaway indicated that he understood and that no promises had been made to him. (Id. at  17-18.) The Court accepted the guilty plea.  (Id. at 18- 19.) And, Hathaway was sentenced within the parameters of the plea agreement.

***Ineffective Assistance of Counsel Claims***

Ineffective assistance of counsel claims are properly raised in 28 U.S.C. § 2255 proceedings.  See United States v. Martins, 413 F.3d 139, 155 (1st Cir. 2005); Rivera Alicea v. United States, 404 F.3d 1, 3 (1st Cir. 2005).  With respect to his ineffective assistance claims, Hathaway bears the burden of proof.  Cirilo-Munoz v. United States, 404 F.3d 527, 530 (1st Cir. 2005) (citing Scarpa v. DuBois, 38 F.3d 1, 8-9 (1st Cir.1994)).  Under Strickland v. Washington, 466 U.S. 668 (1984) Hathaway must "show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's failures, the outcome would likely have been different." Cirilo-Munoz, 404 F.3d at 530 (citing Strickland v. Washington, 466 U.S. at 687 and Cofske v. United States, 290 F.3d 437, 441 (1st Cir.2002)).   The Strickland "two-part standard … [is] applicable to ineffective-assistance claims arising out of the plea process." Hill v. Lockhart, 474 U.S. 52, 57 (1st Cir. 1985).

Hathaway cites eight ways in which, in his opinion, counsel performed ineffectively.  First he asserts that Counsel did not file an appeal.  In <u>United States v. Gil-Quezada</u> the First Circuit synthesized its appeal waiver analysis:

> A waiver of appellate rights is valid if a "defendant enter[ed] into it knowingly and voluntarily." <u>United States v. Teeter</u>, 257 F.3d 14, 24 (1st Cir.2001). In <u>Teeter</u>, we established a three-pronged test for determining whether that standard has been met and, if so, whether the waiver should be enforced. <u>Id.</u> at 24-26. First, the written plea agreement must clearly set forth the scope and terms of the waiver. <u>Id.</u> at 24. Second, the district court, at the change-of-plea hearing, must call the waiver to the defendant's attention and question him closely in order to ensure that he has a full understanding of the waiver provisions and that he has knowingly and voluntarily elected to waive his right of appeal. <u>Id.</u>; <u>see</u> Fed.R.Crim.P. 11(b)(1)(N) (requiring such a colloquy). Third, even if the plea agreement and the change-of-plea colloquy pass muster, we will not enforce the waiver if doing so would work a miscarriage of justice. <u>Teeter</u>, 257 F.3d at 25.

445 F.3d 33, 36 (1st Cir. 2006).  Hathaway's waiver of his right to appeal complied with the first two prongs of  <u>Teeter</u>/<u>Gil-Quezada</u> and Hathaway had provided no fodder in this 28 U.S.C. § 2255 to suggest that counsel could have argued that he should be relieved of this otherwise valid waiver.  <u>See</u> <u>Teeter</u>, 257 F.3d at 25-26.

With respect to the performance of his trial attorney, Hathaway's second, seventh, and eighth examples of ineffectiveness are related.  He argues that his attorney did not make an argument that the children in the images were not actual children and that counsel lacked diligence in knowing the law because he advised him to plead guilty without understanding <u>United States v. Hilton</u>, a First Circuit case which held that "the government must prove that an image depicts actual children to sustain a § 2252A(a)(5)(B) conviction." 386 F.3d 13, 18 (1st Cir. 2004).  These two assertions seem to boil down to an argument that counsel should have advised Hathaway that the United States could have been put to the test in proving this element of his crime.  <u>See</u>

7

<u>Barber v. United States</u>, No. 93-1090, 2 F.3d 1148 (1st Cir. Aug. 23, 1993) (unpublished disposition).

The record demonstrates that Hathaway agreed that "at the time in question he had in his possession a computer image of at least one known and identified minor under the age of 12 engaged in sexually explicit conduct" but that counsel did assert on his client's behalf a disagreement "with the prosecution's claim that there are 595 images of apparent child pornography or that there are 18 images showing known minors engaged in sexually explicit conduct or the lascivious exhibition of genitals or pubic area of the persons."   Gauging by the content of Hathaway's "Motion of Discovery Request" (Civ. No. 06-134-P-H, Docket No. 9) it is evident that Hathaway does not have any concrete evidence that the images did not involve actual children but has in mind a fishing expedition.  Furthermore, counsel's advice on the issue of pressing proof of the use of actual children must be viewed in the context of Hathaway's decision to waive indictment, plead guilty, and obtain a plea agreement with the prospect of an acceptance of responsibility departure.

In his third Sixth Amendment claim Hathaway complains that counsel did not raise an affirmative defense that Hathaway tried to notify authorities that he was receiving unwanted child pornography.  It is not clear from Hathaway's pleadings whether he envisioned this affirmative defense as something to be asserted at sentencing or at a trial had he not decided to plea.  With respect to this claim the United States notes:

> First, there are no facts in the record to suggest that Hathaway in fact made such a report. Second, even if true, merely reporting the receipt of the illegal material would not constitute a defense to the charge in this case where there was substantial evidence that the defendant intentionally possessed the child pornography regardless, and in fact, showed it to his daughter in an effort to induce her to have sexual intercourse with him.

(Gov't Resp. at 15-16.)

In his fourth ineffective assistance of counsel sub-complaint, Hathaway faults his attorney for not telling him that he could change his plea.  As the United States points out, Hathaway offers no explanation as to when this alleged deficiency occurred or why he would have been entitled to this relief if counsel had so informed him.  Taking the various pleadings filed by Hathaway as a totality I cannot, out of thin air, discern how counsel might have been ineffective for not informing Hathaway about his right to withdraw his plea.  Furthermore, the Court was very clear with Hathaway on the consequences of his plea and warned him of the rights he was foregoing.  What is more, the plea agreement contained the Rule 410 waiver.

In his fifth articulated discontent with counsel, Hathaway asserts that his attorney did not question the sufficiency of the Government's compliance with the Justice for All Act and the Protect Act.  As I read his argument Hathaway is asserting that because the Government did not produce more than one victim at sentencing it had no "means of contacts" with the other victims and therefore could not comply with these <u>victim</u> protection acts.  The duty imposed by victim protection acts runs between the government and the victims.  If anything, Hathaway's defense attorney would have jeopardized his client's sentencing exposure had he pressed for the assertion of more victims' rights apropos Hathaway's prosecution.

The last remaining ineffective assistance complaint interposed by Hathaway is that his attorney did not question the validity of the photographs by determining the date the images were made.  I, like the United States, cannot comprehend the relevance that

the date the photos were made has to the propriety of Hathaway's conviction and sentence.

***Miscarriage of Justice***

Apropos his miscarriage of justice claim, Hathaway contends that he has been wrongfully convicted in view of <u>Hilton</u>, he was denied his Sixth Amendment right to effective counsel; he has been wrongfully incarcerated; and the Government failed to totally comply with the Protect Act. Having not sought relief through a direct appeal, Hathaway seems to be summoning the concept of miscarriage of justice to secure 28 U.S.C. § 2255 review. <u>See</u> <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962); <u>see</u> <u>also</u> <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982); <u>Singleton v. United States</u>, 26 F.3d 233, 236 (1st Cir. 1994).

The lack of viability of Hathaway's ineffective assistance claims is discussed fully above. As too his unexplained evocation of "wrongful incarceration" and the "Protect Act" his motion provides no basis for considering these claims. <u>See</u> <u>Barrett v. United States</u>, 965 F.2d 1184, 1186 (1st Cir. 1992); <u>cf.</u> <u>Lundgren v. Mitchell</u>, 440 F.3d 754, 764 (6th Cir. 2006) ("Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced."). With regards to Hathaway's evocation of <u>Hilton</u>, even assuming that Hathaway could raise this claim having not pursued a direct appeal, it is evident that the entire case was handled with an awareness of the <u>Hilton</u> holding, from the filing of the information through to the imposition of sentence. <u>See</u> <u>United States v. McGill</u>, 11 F.3d 223, 225 (1st Cir. 1993) ("[W]hen, as in this case, a petition for federal habeas relief is presented to the judge who presided at the

petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing.").

### Misdirection of the Court

Under his Ground 3 header, "Misdirect the Court," Hathaway asserts that the Government attempted to misdirect the court into thinking that he was a pedophile by quoting cases involving actual molestation; the probation officer attempted to hold information from the court regarding emails that Hathaway told the officer he got in an effort to get a conviction; and the Government attempted to misdirect the Court by inferring that Hathaway had a total disregard of the law and was some outrageous dangerous criminal with the intent of harming the public, when in actuality Hathaway professes to never having harmed anyone.  I agree with the United States these discontents are not cognizable 28 U.S.C. § 2255 claims.  See Frady, 456 U.S. at 165; Singleton, 26 F.3d at 236.

### Harassment by Probation Officer

Finally, the United States is entirely right in arguing that Hathaway's claims of harassment by United States Probation Officer Matt Brown, even if credited, do not provide a basis for 28 U.S.C. § 2255 relief as to his criminal conviction or sentence.

### Conclusion

For the reasons above, I recommend that the Court deny Hathaway's motion seeking 28 U.S.C. § 2255 relief.

### NOTICE

A party may file objections to those specified portions of a
magistrate judge's report or proposed findings or recommended decisions

entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

December 8, 2006.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge